CONTINENTAL INSURANCE COMPANY OF NEW YORK v. GEO. V. McCULLOCH.

Decided January 13, 1897.

1. **Insurance—Liquidated Demand.**

A fire insurance policy insuring the owner "to an amount not to exceed one thousand dollars" becomes a liquidated demand for one thousand dollars by operation of the statute, in case of total loss.

2. **Immaterial Error—Demurrer—Insurance—Total Loss.**

In an action on a fire insurance policy error in sustaining demurrers to pleas setting up various defenses, all dependent upon the allegation that the loss was partial, not total, becomes immaterial where, under other pleas, the issue of partial or total loss was raised and upon undisputed evidence the loss was found to be total.

APPEAL from the District Court of McLennan County. Tried below before Hon. SAM R. SCOTT.

*Dyer & Dyer*, for appellant.

*Clark & Bolinger*, for appellee.

COLLARD, ASSOCIATE JUSTICE.—The statement of the nature and result of the suit as made in appellant's brief is accepted by appellee, and is as follows:

On June 15, 1895, George V. McCulloch, appellee, as plaintiff in the court below, brought suit against the Continental Insurance Company of New York, appellant, alleging that on, to-wit, the 19th day of January, 1895, the defendant insurance company insured the plaintiff, in consideration of the sum of thirteen dollars, as a premium paid it therefor, for one year from the 22nd day of January, 1895, against all

direct loss or damage by fire, "to an amount not to exceed one thousand dollars," on the one-story frame shingle-roof dwelling-house, with adjoining and communicating additions, including foundations, heating apparatus, piping, plumbing, gas and other fixtures, while occupied by the plaintiff as a private residence, known as No. 613 North Fourth Street, Waco, Texas; that on or about the first day of March, 1895, a fire occurred, whereby the building covered by said policy of insurance was totally destroyed and became a total loss, within the meaning of the law, and said policy became, in the law, a liquidated demand for the amount named therein; that immediately after the fire plaintiff gave defendant notice of said loss in writing, and thereafter, within sixty days after the fire, furnished the defendant with signed and sworn proof of loss, etc., and in all respects complied with the terms and conditions of said policy, so as to entitle him, the plaintiff, to recover thereon.

The defendant insurance company, being cited, appeared and filed the following defenses: 1. General demurrer. 2. General denial. And also the following special defenses:

3. "And for special defense, this defendant says that by the terms of its contract of insurance herein, it was expressly stipulated and provided as follows: 'This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs. And the loss or damage shall be ascertained or estimated according to such actual cash value, with the proper deduction for depreciation, however caused, and it shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality. Said ascertainment or estimate shall be made by the insured and this company; or if they differ, then by appraisers as hereinafter provided; and the amount of loss or damage having been thus ascertained, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proofs of loss have been received by this company in accordance with the terms of this policy.'

"This company charges and avers that the actual cash value or damage accruing to the plaintiff in consequence of damage by fire did not exceed six hundred dollars. And this defendant company makes known to the court, charges and avers that, with a view of ascertaining definitely the damage coming to and sustained by the plaintiff in consequence of the fire coming to his property covered by said contract of insurance, did apply to the insured with a view to the ascertainment and the estimate in case of difference (it being averred that they differed), by demanding an appraisement as provided by the terms of said contract of insurance, and the plaintiff, arbitrarily, notwithstanding it would not cost more than the sum of six hundred dollars to have repaired and replaced the property covered by said contract of insurance with like kind and quality of material, refused to permit this defendant company to repair and replace said insured property, and did fail and refuse to agree

to an appraisement as to the value of his damages, as provided by the terms, conditions and stipulations of said contract of insurance; all of which this defendant is ready to verify.

4. "And further specially answering, this defendant company says that it denies that the loss coming to the plaintiff, to his property covered by its contract of insurance sued upon in this case, was a total loss, but on the contrary this defendant company avers and charges that the loss was only a partial one, and at all events nothing more than a technical loss, and was a slight loss, and not a loss whereby the plaintiff sustained damage in and above the sum of six hundred dollars, all of which this defendant is ready to verify.

5. "This defendant company avers and charges that its contract of insurance provides among other things as follows: 'In the event of a disagreement as to the amount of loss, the same shall as above provided be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire. The appraisers together then shall estimate and appraise the loss, stating separately sound value and damage, and failing to agree shall submit their difference to the umpire, and the award in writing of any two shall determine the amount of such loss. The parties thereto shall pay the appraisers respectively selected by them, and shall bear equally the expenses of the appraisal and umpire.'

"And this defendant makes known, charges and avers that pursuant to said provision of its contract of insurance it did well and truly make demand of the plaintiff for an appraisement in accordance with the stipulations of its said contract of insurance, and the plaintiff, wholly ignoring said contract, did refuse to submit to such arbitration with a view of ascertaining the loss of his damage coming to him, and in all things violated the terms and conditions of his contract of insurance; all of which this defendant is ready to verify.

6. "Answering further herein, if so required, this defendant company comes and says that if this Honorable Court should, after a hearing of the evidence in this case, determine that plaintiff's loss is a total one, then and in such an event this defendant says that the plaintiff's property covered by said contract of insurance at the time of the destruction thereof, as alleged by him, by fire, was not then and there worth more than the reasonable value of one thousand dollars. And this defendant company says that if this court should determine that said loss is a total one, then this defendant company charges and avers that said total loss was such only technically, and was not a damage to said property to an extent of more than the sum of six hundred dollars; and this defendant company charges and avers that said house, standing as it was, in the manner and form it stood as damaged, was not damaged in the sum beyond or to the extent of more than six hundred dollars, and this defendant now recoups, offsets and claims, in the event that this court should determine that the said plaintiff has sustained a total loss,

the value of said house at the time of the damage thereto by fire, as a proper, equitable and just set-off against the plaintiff's liquidated and total-loss claim; all of which this defendant is ready to verify.

7. "And further specially answering herein, this defendant company comes, makes known and charges that the plaintiff, whilst claiming a total loss herein, has recently contracted for the repair of the insured building covered by this defendant's contract of insurance, and has secured the rebuilding and repair thereof at and for the sum of $500, which has indemnified him fully, and placed the said house covered by this defendant's contract of insurance in a better state of repair and condition than the same was when it was destroyed by fire, and this defendant says that its contract being one for indemnity merely, it would be a fraud upon its rights to allow the plaintiff to recover the full amount of insurance mentioned in the policy, to-wit, one thousand dollars, and thus have his house rebuilt, repaired, placed new and in a better condition than it was before the fire, whereby he would be fully indemnified, all of which this defendant is ready to verify.

8. "This defendant says that while it may have contracted in view of our statute concerning insurance and liquidated demands in the event of loss, still this defendant says that said statute does not and was not intended to prevent parties from contracting, and did not in this case, for a liability to the extent of the damage done to the insured property; and as the plaintiff contracted not to claim damage above the actual damage sustained and coming to him by fire under said contract of insurance, that it is not rendered incompetent to make such contract, and as the plaintiff has entered into such contract, and agreed concerning his damage, that the statute can not and does not override the contractual relations entered into by the plaintiff and this defendant concerning the amount of damage sustained and coming to the plaintiff by reason of damage sustained by him under this defendant's contract of insurance; all of which this defendant is ready to verify, sustain and and make known to the court."

Plaintiff appeared and filed a first supplemental petition, being a demurrer to the special defenses of the defendant as embodied in paragraphs 3, 4, 5, 6, 7 and 8 hereinabove referred to; and also a general denial of the matter set up by the defendant in its answer.

On the 20th day of November, 1895, there was a trial of said cause before the court, and the court, upon a consideration of the plaintiff's exceptions to the said special defenses, sustained all of the same except the exception to paragraph 4 as contained in the answer of the defendant, to which ruling defendant duly excepted. Judgment was rendered in favor of the plaintiff against the defendant for the sum of one thousand dollars, with interest from the 27th day of May, 1895, at the rate of six per cent per annum, besides all costs of court. Defendant excepted to the ruling of the court, and the rendition of said judgment, and gave notice of appeal.

We find the facts as follows: 1. The policy of insurance declared

on, insuring plaintiff from January 22, 1895, to January 22, 1896, at noon, against all loss or damage by fire, "to an amount not to exceed one thousand dollars," on plaintiff's dwelling house described in said petition, which insurance was extended to the plaintiff in considera- tion of a premium of thirteen dollars paid by the plaintiff to the defendant company, contains the following clause: "This com- pany shall not be liable beyond the actual cash value of the property at the time of any loss or damage occurs; and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this com- pany, or if they differ, then by appraisers as hereinafter provided, and the amount of loss or damage having been thus ascertained, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of loss have been received by this company in accordance with the terms of this policy.

"In the event of a disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinter- ested appraisers, the insured and the company each selecting one, and the two so chosen shall first select a competent and disinterested umpire. The appraisers together then shall estimate and appraise the loss, stating separately sound value and damage, and failing to agree shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of such loss. The parties thereto shall pay the appraisers respectively as selected by them and shall bear equally the expenses of the appraisal and umpire."

2. Plaintiff proved that on March 1, 1895, a fire occurred, whereby the building covered by the said policy of insurance of the defendant company was damaged by fire to the extent named below.

3. Plaintiff proved that immediately after the property covered by defendant's policy of insurance was so damaged by fire he, the plaintiff, gave the defendant company, in accordance with the terms of the policy, due notice of the occurrence of such fire and damage to his house cov- ered by said policy.

4. Plaintiff proved that on March 27, 1895, he delivered to the de- fendant company proofs of loss as required by said defendant's policy of insurance.

5. Plaintiff, as a witness for himself, testified that his dwelling house covered by defendant's policy of insurance was on March 27, 1895, as aforesaid, damaged by fire to such an extent and manner as to make said house lose its identity and specific character as a building, and so that he could not use it as a dwelling house for himself and family, and that his said dwelling house by said fire and the damage thereto by fire became a total loss.

*Opinion.*—Conceding that it was error to sustain demurrers to the special defenses set up by appellant, it must be admitted that the question of total loss of the building was left in the case, both by the general denial and the fourth paragraph of the answer. Under the pleadings defendant could have proved that the loss was only partial, and the amount due upon the policy would have been the actual damage to the building, for which the policy furnished only an indemnity.

The plaintiff proved that the house was a total loss. It was proved without contradiction that the house—a residence—was damaged by the fire to such an extent and manner as to make the house lose its identity and specific character as a dwelling house for plaintiff and his family, and that the dwelling house by the fire and the damage thereto became a total loss.

Our statute declares that "A fire insurance policy, in case of a total loss by fire of the property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. Provided, this article shall not apply to personal property." Sayles' Civ. Stats., art. 2971.

A contract in violation of the statute is void. Ins. Co. v. Holland, 2 Willson' App. C., sec. 448; Ins. Co. v. Levy, 33 S. W. Rep., 992. This statute is so strictly applied in this State that the demand is held to be liquidated in case of total loss when the policy stipulates for only a partial indemnity in case of other insurance with the consent of the defendant company. The fact that full indemnity is secured by all the policies furnishes no grounds for refusal to pay the full amount of the several policies. Queen Ins. Co. v. Jefferson Ice Co., 64 Texas, 578.

In the case cited the court say: "The language of the statute is clear, and its purpose evidently was to make all policies on real property, in cases of total loss, valued policies, without reference to stipulations contained in them which would give them a different character but for the statute, which becomes a part of every such contract. By force of the statute, when the loss is total, the policy evidences a liquidated demand, against the company issuing it, for its full amount."

None of the special defenses set up by appellant could be made available in case the loss was total, as proved. There was no attempt to dispute the proof, and no testimony was offered by defendant upon the subject. That issue was left open for proof, if any existed. All the defenses to which demurrer was sustained rested upon the averment that the loss was not total. The fact being found without dispute that the building was wholly destroyed, the special defenses evidently could not stand, if proved.

Admitting, then, that with the special and general denial of total loss in the answer it would be erroneous before proof to sustain exceptions to the special defenses, we cannot see the propriety or necessity of reversing the case upon that ground when the undisputed testimony shows a total loss. If we should do so it would be merely to comply with a form in order to reach the same conclusion attained by the ruling on the

demurrers, when it can not be denied that the case has been decided on its merits.

The statute in relation to the hearing of causes by the Courts of Civil Appeals provides that, "There shall be no reversal on appeal or writ of error, nor shall the same be dismissed, for want of form, provided sufficient matter of substance be contained in the record to enable the court to decide the case upon its merits." Rev. Stats., 1895, art. 1024.

If the question were raised by a ruling of the court in excluding testimony which ought to be admitted by the court upon the issue that the loss was only partial, as in the case of the Royal Ins. Co. v. McIntyre, decided by the Supreme Court November 23, 1896 (90 Texas, 170),—if defendant had been deprived by the court of the right to prove that the loss was not total,—the right would be a substantial one, and we would be required to reverse the judgment; but no such case is presented. We are only asked to reverse so as the court below may proceed formally and allow the excluded issues to remain and be tried in case there be proof of only a partial loss. When the evidence of total loss is certain and undisputed, we should not send the case back merely for such purpose, the ruling on the demurrers having left undisturbed the issue of total or partial loss upon which proof was admissible on both sides. If the special issues had remained in the case, and the testimony had been the same, the court would not have been required to submit them in the charge, but in that case he should have refused to submit them. Ins. Co. v. Meyer, 29 S. W. Rep., 93.

We cannot say that there was error in the judgment of the lower court, and it is affirmed.

*Affirmed.*