THE STATE OF KANSAS, *ex rel. S. B. Bradford, Attorney General,* v. STEPHEN J. OSBORN, *as District Judge, &c.*

UNORGANIZED COUNTY—*No Term of District Court.* In an action in the nature of *quo warranto,* by the state, on the relation of the attorney general, where it is alleged that no term of the district court can lawfully be held in Wallace county, and it not appearing that Wallace county is an organized county, but on the contrary, it appearing from the statutes that it is not an organized county, *held,* that it is not an organized county, and no term of the district court can legally be held therein.

*Original Proceedings in Quo Warranto.*

THE opinion states the case.

*S. B. Bradford,* attorney general, for The State.

*G. C. Clemens,* for defendant.

The opinion of the court was delivered by

VALENTINE, J.: This is an action in the nature of *quo warranto,* brought originally in this court March 18, 1887, by the attorney general, to inquire by what authority the Hon. Stephen J. Osborn, judge of the 23d judicial district, assumes to hold a term of the district court in and for Wallace county, Kansas, and to exercise other powers which cannot be exercised except upon the theory that a lawful term of the district court can be held in that county, when in fact and in law, it is alleged, no such term of court can legally be held in that county. This is the only question intended to be presented by the parties to this court; and this question arises upon a demurrer by the defendant to the plaintiff's petition. The plaintiff alleges, among other things, as follows:

"In truth there is no such court in existence as the district court of Wallace county, and no term thereof to be held at said time, nor, as yet, at any time; but said Wallace county is and remains attached for judicial purposes to the county of Trego, the said county of Wallace not having been declared organized by this honorable court."

There is no allegation in this petition further than we have already stated, as to whether the county has ever been organized or not, or whether any court has ever declared it to be organized or not; and this court cannot take judicial notice of any of these matters. Courts cannot take judicial notice of even matters contained in the records of their own courts, except so far as such matters are contained in the r ecords of the immediate case under consideration. (*Banks v. Burnam,* 61 Mo. 76; *Lake Merced Water Co. v. Cowles,* 31 Cal. 215; *National Bank v. Bryant,* 13 Bush, 419; *Baker v. Mygatt,* 14 Iowa, 131.)

Everything is admitted necessary to authorize the holding of a term of the district court in Wallace county, except that it is not admitted that the county of Wallace is an organized county, and not admitted that the supreme court has declared it to be such; and these matters are denied, the first impliedly, and the second expressly; and under the allegations of the petition and the statutes of this state, we are inclined to think that the county is not organized. Section 1 of an act relating to Wallace county, approved March 12, 1879, reads as follows:

"SECTION 1. That the county organization of the county of Wallace, in the state of Kansas, be and the same is hereby declared null and void, and the said county organization is hereby vacated and set aside."

It is also provided in the same act, that for the purpose of completing the dissolution of the county organization, the attorney general is authorized and directed to commence an action in the supreme court, but that no judgment shall be rendered in the action nor the county disorganized until a certain other judgment is paid.

Section 1 of an act to create the seventeenth judicial district, approved March 5, 1881, reads as follows:

"SECTION 1. That the seventeenth judicial district be and the same is hereby created, comprising the organized counties of Phillips, Rooks, Ellis, Trego, Graham, Norton, Decatur, and Sheridan, and the unorganized counties of Gove, Wallace, Thomas, Sherman, Rawlins, and Cheyenne."

It also provides, in § 3 of the last-mentioned act, among other things, as follows:

"SECTION 3. That for judicial purposes the unorganized counties of Wallace and Gove are hereby attached to the county of Trego."

Section 1 of the act to create the twenty-third judicial district, approved February 19, 1886, reads as follows:

"SECTION 1. That the twenty-third judicial district be and is hereby created, comprising the organized counties of Rush, Ness, Ellis, and Trego, and the unorganized counties of Gove, St. John, Wallace, Lane, Scott, Wichita, and Greeley."

Section 2 of the same act provides, among other things, that terms of the district court shall be held in the organized counties at certain and particular times, and in the unorganized counties as follows:

"In the counties of Gove, St. John, Wallace, Lane, Scott, Wichita, and Greeley, after the same have been organized, at such times as the judge of the district court shall order."

Section 1 of an act to fix times for holding court in the twenty-third judicial district, approved March 5, 1887, provides for holding terms of the district court in certain counties at certain and particular times, and in the following counties as follows:

"In the county of Wallace on the fourth Monday in April and the fourth Monday in October, after the same shall be declared organized by the supreme court; and in the county of Logan, after the same has been organized, at such time as the judge of the district shall order." (Laws of 1887, ch. 145, § 1.)

The supreme court has no power to organize counties, and no power in any direct action or proceeding to declare a county organized; for no action can be brought in the supreme court or elsewhere for the mere purpose of having the supreme court declare that a county is or has been organized. Hence the foregoing words, "after the same shall be declared organized by the supreme court," cannot mean what their literal import would seem to signify. It is true, that we can easily conceive of actions in which the question might incidentally arise as to whether a county has been duly organized or not, and in such action the supreme court might determine and declare whether the county had been organized or not; but it can hardly be supposed that the legislature would intend in any case that no court should be held in an organized county until after the question of its organization might *incidentally arise* in some action and be determined by the supreme court, and the fact declared that the county had been duly organized. The constitution seems to contemplate that every organized county *must have* a district court. (Const., art. 3, § 7.) There-

fore, as the supreme court has no power to organize counties, and no power in any direct action or proceeding to declare a county organized, and as it would seem that *every organized* county *must have* a district court, it would seem that the foregoing words, "after the same shall be declared organized by the supreme court," should be construed to mean substantially the same as the words, "after the same shall be organized." It appearing, however, in this case, that the county is not organized, the prayer of the plaintiff's petition must be sustained.    Such prayer reads as follows :

"Wherefore, said attorney general for and on behalf of the state of Kansas, prays that the said Stephen J. Osborn, defendant, may be ousted from the exercise of the said powers and functions of sitting as and for a district court of said county of Wallace, and of acting as judge of said pretended district court."

Judgment will be rendered in favor of the plaintiff.

All the Justices concurring.